UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
DEMETRIUS MORENO,

                Plaintiff,               MEMORANDUM AND ORDER

   -against-                                  CV 05-2627 (LDW) (AKT)

THE TOWN OF HUNTINGTON, et al.,

                Defendants.
----------------------------------------------------X
APPEARANCES:

       LEEDS MORELLI & BROWN, P.C.
       BY:  RICK OSTROVE and THOMAS RICOTTA, ESQS.
       Attorneys for Plaintiff
       One Old Country Road, Suite 347
       Carle Place, New York  11514

       CULLEN & DYKMAN LLP
       BY: JAMES P. CLARK, ESQ.
       Attorneys for Defendants
       100 Quentin Roosevelt Blvd.
       Garden City, New York  11530

WEXLER, District Judge

      Plaintiff Demetrius Moreno ("Moreno") brought this action against defendants asserting claims for discrimination and retaliation under 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000-e et seq.; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.  By Memorandum and Order dated March 8, 2007, the Court denied defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("FRCP").  Defendants timely filed a motion for reconsideration, and then, before a decision on that motion, filed a notice of interlocutory appeal. Subsequently, defendants withdrew their motion for reconsideration on April 4, 2007, so that they may pursue their interlocutory appeal.  By order dated June 21, 2007, and entered July 16,

2007 on this Court's docket, the Second Circuit noted the filing by defendants of their motion for reconsideration and stayed the appeal pending this Court's determination of that motion. Apparently, the parties did not inform the Second Circuit that defendants withdrew their motion for reconsideration. Nevertheless, by letter dated July 26, 2007, defendants requested reinstatement of their motion for reconsideration. The Court hereby grants the motion for reconsideration and, upon reconsideration, grants the motion for summary judgment dismissing the complaint.

## I. BACKGROUND

The evidence presented on the summary judgment motion can be summarized as follows. Moreno, a black Hispanic male, was hired as a full-time employee by the defendant Town of Huntington (the "Town") in 2000 as part of a settlement of an earlier race discrimination lawsuit filed against the Town, where he was represented by current counsel. According to Moreno, he was hired by the Town in 1999 for a position in the Highway Department, but he was terminated before even beginning the job. He complained of race discrimination and was rehired to work in the General Services Department of General Services as an Auto Equipment Operator ("AEO"). For two years, he worked in the Off-Street Parking Division of General Services. During that time, defendant Thomas Cavanagh ("Cavanagh") was the director of General Services. Sometime in 2002, Moreno moved to the Beaches and Marines Division of the Department of Maritime Services, where he was an AEO and was paid at a Grade 10 salary level.

In October 2002, Moreno applied for a promotion to the position of Heavy Equipment Operator II ("HEO II"), Grade 12, back in the Off-Street Parking Division. The HEO II position

3

is higher than the AEO and HEO I (i.e., Heavy Equipment Operator I) positions.  The open HEO II position required the operation of heavy equipment and the supervision of an overnight crew, duties which Moreno claims he previously performed in Maritime Services.  He also claims that he had five years of experience as a heavy equipment operator with the New York State Department of Transportation.  Moreno was interviewed by an applicant screening committee.  The committee recommended Brent Whiteman, a Caucasian, to Cavanagh as the most qualified applicant, with Moreno recommended as the second most qualified applicant.  Cavanagh appointed Whiteman to the position, claiming to have reviewed the committee's recommendations and the qualifications of the candidates.  Moreno received a letter from Cavanagh in December 2002 notifying him that he had not been selected for the HEO II position.  Moreno claims Whiteman was less qualified, had no experience with the Town, and yet was given the top pay scale.  According to Moreno, minority employees have never been given top pay after being hired "off the street."  Moreover, according to Moreno, Cavanagh conceded that it is the Town's policy to give a position to the more senior applicant where applicants are equally qualified.  However, Moreno concedes that he had a good relationship with Cavanagh before December 2002 and that Cavanagh never made any comments to him about Moreno's race.

In a letter dated February 25, 2003, Moreno complained to Cavanagh that he believed his denial of promotion was based on discrimination.  While Moreno emphasizes that Cavanagh did not forward the letter to the Town's EEO officer, Dr. Lawrence Miller ("Dr. Miller"), defendants emphasize that Moreno did not request any investigation of the failure to promote him.  Instead, according to defendants, Moreno's letter to Cavanagh simply requested that he be "considered

4

for a promotion in the near future." By letter dated March 17, 2003, Cavanagh responded to Moreno's February 25 letter, advising him that he had been ranked as the second most qualified candidate for the HEO II position and explained the reasons why he was not selected. Cavanagh's March 17 letter included a copy of the Town's EEO policy and advised Moreno that he could file a complaint with the Town's EEO officer if he felt that he had been discriminated against. Moreno was familiar with the Town's EEO policy and procedures. By letter dated May 15, 2003, Moreno responded to Cavanagh's March 17 letter.

Moreno maintains that he wrote a complaint to the union, and that Harry Hennessey of the union purportedly agreed that it was unfair for Whiteman to have been given the position over Moreno. Moreno also maintains that he sent his February 25 letter to defendant Town Supervisor Frank Petrone ("Petrone") and defendant Town council members Marlene Budd ("Budd"), Mark Cuthbertson ("Cuthbertson"), Susan Berland ("Berland") and Mark Capodonno ("Capodonno"), but they failed to conduct an investigation to remedy the discrimination and retaliation. Moreno filed a complaint in November 2003 with the Town's EEO officer, Dr. Miller, regarding the HEO II position, but he claims that Dr. Miller refused to accept the complaint as time-barred.

According to defendants, on June 5, 2003, the Town posted a notice of two vacancies for "HEO II" positions within the Refuse Division of the "Department of Environmental Waste Management." On June 16, 2003, Moreno submitted an application for an HEO II position to the Town's Personnel Office. As a result of that application, Moreno was "promoted" to the title of HEO II in the Refuse Division on August 6, 2003. Due to his promotion, defendants

5

maintain, Moreno received a higher title and moved to a grade 12 on the salary schedule, resulting in a $4,000 annual raise.

Moreno's account of these events differs from defendants' account. According to Moreno, in June 2003, Cavanagh contacted him and instructed him to apply for an "HEO II" position. Cavanagh told Moreno that the position was in the department Moreno was already in, i.e., Maritime Services, even though there were no vacant HEO positions in that department at the time. Despite this representation, Moreno was given the HEO II position in the Refuse Division, where he claims that he will never be able to advance above grade 12 and where he had to perform substantially less desirable work as a garbage collector. Moreno claims he never applied or interviewed for that position. Upon being advised that he was being transferred to the Refuse Division, Moreno complained that the assignment was discriminatory and done in retaliation for his complaints. He maintains that he complained to "numerous" people, including Dr. Miller – the Town's EEO officer – and defendant Budd. Regarding his complaint to Budd, Moreno received a response from Budd on "her husband's stationery," bearing the seal of the U.S. House of Representatives, where he serves as a congressman. In the memo to Moreno, she indicated that she did not think that he was treated unfairly, explaining that she spoke to Cavanagh and understood that he got the promotion for which he applied. She concluded, "I trust this resolves your problem."

In response to Moreno's assertion that he complained about the transfer, defendants point out that the June 5 notice specifically referenced that the HEO II positions were in the Department of Environmental Waste Management and that Moreno applied for, received, and did not reject the promotion to an HEO II. Rather, he voluntarily accepted the transfer to the

Refuse Division with the increased salary and higher grade and title.  Defendants also dispute that Moreno's work was mainly as a "garbage collector."  Defendants point out that Moreno concedes that he and more senior HEOs in the Refuse Division are assigned to operate garbage trucks and bulk trucks and work on the back of the truck (as lower-level laborers generally would) as necessary.  Indeed, Moreno concedes that as a result of difficulties with the truck routes and some of the laborers with him, he requested, on occasion, to be assigned to work on the back of the truck rather than to drive.  Moreover, according to defendants, Cavanagh had no role in Moreno's transfer, other than to encourage him to apply, and Moreno does not dispute that he was not working in Cavanagh's department at the time of the transfer.

While working in the Refuse Division, Moreno's supervisors were defendants John Hall ("Hall") and Don Taylor ("Taylor"), an African-American.  Moreno claims that he was subject to discriminatory and retaliatory acts while working in the Refuse Division.  In one instance, he claims that Hall told him to pick up a discarded couch.  In doing so, dog feces underneath the couch cushions fell onto him.  When he asked Hall for a new shirt, Hall told him to ask Taylor.  When Moreno asked Taylor for a shirt, Taylor refused, even though Taylor had shirts available and regularly gave them out to other employees when needed.   This refusal, according to Moreno, was in retaliation for Moreno's past complaints.  Moreno further believes Taylor treated him differently than white employees by, for example, preventing Moreno from driving trucks, assignments given to white subordinates.  Moreno maintains that he complained to Hall about Taylor's conduct, but to no avail.

Moreno filed an EEOC charge against the defendants on October 29, 2004, and claims that he was subject to further retaliation.  For example, he claims that he was instructed to pick

up a mattress, but he was not told that someone had died on the mattress so that he could take proper precautions before handling it. In lifting the mattress, Moreno claims he was splattered with human remains. As a result, he worried about contracting a lethal illness and sought psychiatric help. According to defendants, the mattress incident occurred on January 5, 2005. At the time, Moreno was assigned to drive a bulk truck upon which the mattress had already been loaded by the local fire department for disposal. The mattress was folded and tied with a tarp over it when it was put on the back of the bulk truck. Taylor was not working on the day in question, so Hall advised Moreno that the mattress was on his truck, but he did not tell him that someone had died on it. Hall claims that he did not tell Moreno to move or touch the mattress. Rather, Hall claims, Moreno was assigned to drive the truck that day and another employee was serving as his laborer. In any event, defendants maintain, Moreno did not suffer any health problems as a result of his contact with the mattress and he never filed a complaint with the Town's EEO office regarding the mattress incident. Rather, Moreno sent a letter, dated February 9, 2005, to Town Attorney John Leo regarding the mattress incident, but made no reference to any claim of discrimination or retaliation. Moreno maintains that he brought this letter to the attention of the defendants Petrone, Budd, Cuthbertson, Berland and Capodonno. The Town responded to his letter by letter dated March 1, 2005.

   On another occasion in 2005, the Suffolk County Sheriff's Department contacted Hall and notified him that it had a warrant for the arrest of Eugene Sherrod ("Sherrod"), a laborer in the Refuse Division. On that day, Sherrod was working as a laborer on Moreno's truck. The Sheriff's Department requested that Hall contact Moreno to direct him to drive his truck to a local firehouse where they would arrest Sherrod. Hall directed Moreno to meet him at the

firehouse, but, according to Moreno, he did not warn Moreno about the planned arrest. At the firehouse, Sherrod was taken into custody by the Sheriff's Department. According to Moreno, Sherrod got mad at Moreno, accusing him of setting Sherrod up. Moreno claims that Hall and Taylor showed up at the firehouse and laughed while they viewed the events. By letter dated February 18, 2005, Moreno wrote to defendant Petrone regarding the incident involving Sherrod's arrest. The Town responded to that letter by letter dated March 10, 2005 from Town Personnel Officer Lisa Baisley ("Baisley"). In the letter, Baisley explained the facts and circumstances that led to the Sheriff's Department requesting the Town's assistance in locating Sherrod. The letter stated that "it appears that there have been no acts of retaliation committed against you" and advised Moreno that he could file a complaint with the Town's EEO Office for any violation of the Town's EEO policy.

Moreno claims that in retaliation for his complaints, he was written up by Hall for failure to wear a helmet and by another supervisor for failing to file a "trip ticket." Although Moreno concedes he was not wearing a helmet on that occasion, he maintains that he got a "final warning" even though he did fill out the trip ticket and notwithstanding that it was the first and only time he was written up. He also claims that defendants continue to deny him promotions to positions within General Services for which he is qualified, including positions for plumbers and masons.[1]

Moreno commenced this action on May 31, 2005, asserting claims for discrimination and retaliation under §§ 1981 and 1983, Title VII, and NYSHRL. Specifically, Moreno claims that

---

[1]Neither side has submitted copies of the letters dated February 25, 2003; March 17, 2003; May 15, 2003; February 9, 2005; February 18, 2005; March 1, 2005; and March 10, 2005.

defendants' failure to promote him to the position of HEO II in General Services in December 2002 was discriminatory (the "failure to promote claim") and that defendants continued thereafter to retaliate against him regarding his transfer to the Refuse Division in August 2003 (the "retaliatory transfer claim") and for incidents such as the mattress, Sherrod's arrest, the "final warning," and continued denial of promotions (the "other retaliatory acts claim"). Following discovery, defendants moved for summary judgment.[2]

## II.  DISCUSSION

A. Summary Judgment Standard

A motion for summary judgment may be granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FRCP 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.  McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).  However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of substantive law.  Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 242.

---

[2] Moreno has not pressed for relief under § 1981; accordingly, the Court treats those claims as withdrawn.

10

Summary judgment is not defeated by vague assertions of unspecified disputed facts. Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). Moreover, in an employment discrimination action, conclusory allegations of discrimination are insufficient to defeat summary judgment. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). "The salutary purposes of summary judgment-avoiding protracted, expensive and harassing trials-apply no less to discrimination cases than to commercial or other areas of litigation." Id.; see also Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Nonetheless, the Second Circuit has reminded district courts that "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." Graham v. Long Island Railroad, 230 F.3d 34, 38 (2d Cir. 2000).

B.  Failure to Promote Claim

Moreno asserts his failure to promote claim under Title VII against the Town and under § 1983 and NYSHRL against the Town, Town board members, and Cavanagh. Defendants argue that this claim must be dismissed (1) under Title VII, because it is time-barred; and (2) under § 1983 and NYSHRL, because Moreno fails to produce sufficient evidence showing that it was the result of discriminatory intent.

   1.  Timeliness Under Title VII

As for the timeliness of this claim under Title VII, the parties agree that Title VII requires a claimant to file a discrimination charge with the EEOC within 300 days of the alleged act of discrimination, see 42 U.S.C. § 2000e-5(e). Defendants argue that the December 2002 failure to promote is time-barred since Moreno did not file his EEOC charge until October 29, 2004. Moreno argues that the failure to promote was part of a "continuing violation," that is, a practice

11

or policy of discrimination, and Moreno may bring suit challenging all conduct that was part of that practice, even conduct that occurred outside the limitations period. According to Moreno, he complained to the defendant Town board members in February 2003 that the December 2002 failure to promote was based on discrimination, but to no avail. He claims that he complained to Dr. Miller and Budd that the assignment to the Refuse Division in August 2003 was discriminatory, but the discrimination again went unremedied. He further claims that he complained after the mattress and Sherrod incidents, but to no avail.

As the Supreme Court has explained, "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Milani v. Int'l Bus. Machs. Corp., 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004). However, the Morgan case did not extend to "pattern-or-practice" claims. Id. at 115 n. 9. A continuing violation may be found where there is "specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994). In such circumstances, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of [the continuous practice and policy of discrimination]." Id. at 703 (quotations omitted); Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004). Thus, "[w]here a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." Id. at 704.

Upon consideration, the Court finds that Moreno fails to raise a genuine issue of material fact as to whether the failure to promote was part of a "specific ongoing discriminatory policy or practice," or part of "specific and related instances" of discrimination allowed to continue unremedied for so long as to amount to a discriminatory policy or practice. In other words, Moreno fails to raise a genuine issue of material fact as to whether there is a sufficient connection between the conduct that was a part of the failure to promote and later conduct that occurred within the limitations period. Thus, the Court finds that this discrete discriminatory act is time-barred. Accordingly, Moreno's failure to promote claim under Title VII is dismissed.

    2. <u>Discriminatory Intent</u>

Defendants concede that Moreno has made a prima facie showing of discrimination under § 1983 and NYSHRL in that (1) he is a member of a protected class; (2) he applied for and was qualified for the job he sought; (3) he was rejected for the position under circumstances giving rise to an inference of discrimination; and (4) the position remained open and defendant continued seeking applicants having his qualifications. However, defendants argue that they have articulated legitimate, non-discriminatory reasons for selecting Whiteman over Moreno and Moreno has failed to produce sufficient evidence showing that the real reason for the employment action was race discrimination. Defendants also argue that Cavanagh "hired" Moreno, a fact which rebuts any inference that he elected not to promote him two years later because of race. Moreno maintains that he was not simply "hired" by Cavanagh, but was hired as part of the settlement of his prior action, and that he has sufficiently shown that the failure to promote was based on defendants' discriminatory intent, which he claims is evidenced by circumstances indicating that Whiteman was hired even though he was less experienced than

13

Moreno, had no experience with the Town, and it was the Town's policy, in any event, to give a position to the more senior applicant where applicants are equally qualified.

Upon consideration, the Court finds that Moreno fails to raise a genuine issue of material fact as to whether discrimination was a substantial motivating factor in the failure to promote. Moreno's contention that he was more qualified than Whiteman, or at least equally qualified to Whiteman, is not sufficient to show that the decision to hire Whiteman was a mask for discrimination. As the Second Circuit has instructed, Moreno's qualifications would have to be "so superior" to those of Whiteman for a reasonable jury to determine that discrimination was the motivating factor in the decision. See Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir.2001). Moreno fails to present evidence sufficient to make this showing. Moreover, Moreno presents no evidence calling into question the evaluation and recommendation of the applicant screening committee, which rated Whiteman higher than Moreno and on which Cavanagh relied. Accordingly, Moreno's failure to promote claim is dismissed under § 1983 and NYSHRL.[3]

C. Retaliatory Transfer Claim

Moreno asserts his retaliatory transfer claim under Title VII and NYSHRL against the Town and under § 1983 against the Town and Town board members. Defendants argue that this claim must be dismissed (1) under Title VII, because it is time-barred; (2) under § 1983, because

---

[3]Defendants also argue that this claim must be dismissed (1) under § 1983, as against the Town, because Moreno fails to show that it resulted from a "custom or policy" as required under Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978); (2) under § 1983, as against Cavanagh in his individual capacity, based on qualified immunity; and (3) under § 1983, as against the Town board members in their individual capacities, because of lack of personal involvement. Given the dismissal of this claim under § 1983, the Court need not reach these additional grounds.

14

the equal protection clause does not protect against retaliation for having opposed discriminatory practices; and (3) under NYSHRL, because Moreno fails to produce sufficient evidence showing that he suffered an adverse employment action and that the transfer resulted from retaliatory animus.

    1. <u>Timeliness Under Title VII</u>

As for the timeliness of this claim under Title VII, this claim was not filed within the 300-day limitations period. Upon consideration, the Court finds that Moreno fails to raise a genuine issue of material fact as to whether the alleged retaliatory transfer was part of a "specific ongoing discriminatory policy or practice," or part of "specific and related instances" of discrimination allowed to "continue unremedied for so long as to amount to a discriminatory policy or practice." In other words, Moreno fails to raise a genuine issue of material fact as to whether there is a sufficient connection between the conduct that was a part of the retaliatory transfer and later conduct that occurred within the limitations period. Thus, the Court finds that this discrete discriminatory act is time-barred. Accordingly, Moreno's retaliatory transfer claim under Title VII is dismissed.

    2. <u>Retaliation Under § 1983</u>

As for the sufficiency of this claim under § 1983, Moreno does not dispute that the Second Circuit has recognized that the equal protection clause does not protect against retaliation for having opposed discriminatory practice, particularly given the availability of Title VII. <u>See</u> <u>Bernheim v. Litt</u>, 79 F.3d 318, 323 (2d Cir. 1996). Accordingly, Moreno's retaliatory transfer claim under § 1983 is dismissed.

Case 2:05-cv-02627-LDW-AKT   Document 49   Filed 03/18/2008   Page 15 of 17

15

   3. <u>Sufficiency Under NYSHRL</u>

As for the sufficiency of this claim under NYSHRL, Moreno does not dispute that he must show that (1) he engaged in protected activity; (2) the Town was aware of his alleged protected activity; (3) he suffered an adverse employment action based upon his protected activity; and (4) there is a causal connection between the protected activity and the adverse employment action. <u>Forrest v. Jewish Guild for the Blind</u>, 786 N.Y.S.2d 382, 396 (N.Y. 2004). For purposes of the motion, defendants concede that Moreno can establish the first two elements. However, defendants argue that Moreno fails to produce sufficient evidence showing that he suffered an "adverse employment action" in being transferred to the Refuse Division and that the transfer resulted from retaliatory animus. In short, defendants argue that Moreno applied for the position posted, <u>i.e.</u>, HEO II in the Refuse Division of the Department of Environmental Waste Management, and was, in fact, "promoted" to that position, where he received a higher grade level, title, and salary. Moreover, defendants maintain that there is no evidence that Cavanagh had a role in the transfer or that Moreno was even working in Cavanagh's department at the time of the transfer. Moreno maintains that the transfer was not a promotion but a "forced reassignment" to a position that he did not request and where he was given substantially less desirable work (which he describes as a "garbage collector"), placed at the bottom of the seniority list, and given no real future opportunities for advancement.

   Upon consideration, the Court finds that Moreno fails to raise a genuine issue of material fact as to whether the transfer to the Refuse Division amounted to adverse employment action and was substantially motivated by retaliatory animus. Despite Moreno's characterization of the transfer in his brief, Moreno does not present sufficient evidence to demonstrate that the transfer

was "forced" or otherwise an adverse employment action.  Moreover, he fails to present sufficient evidence that the transfer resulted from retaliatory animus by the Town.  Despite Moreno's assertions, the evidence is not sufficient to show that Cavanagh even had a role in the transfer or in any way forced Moreno to apply for or accept the transfer.  Accordingly, Moreno's retaliatory transfer claim under NYSHRL is dismissed.

D.  Other Retaliatory Acts Claim

Moreno appears to assert this claim for retaliation under Title VII and NYSHRL against the Town and under NYSHRL against the Town board members, Taylor, and Hall.  Defendants argue that Moreno fails to provide sufficient evidence that Taylor's or Hall's acts were motivated by retaliation for any complaints of discrimination by Moreno.  Moreno argues that Taylor's and Hall's acts were taken against Moreno but not against similarly situated employees who had not complained of discrimination.  Moreover, Moreno asserts, in his brief, that upon his arrival in the Refuse Division, Taylor "expressed to [Moreno] that there would not be any discrimination complaints on his watch, in essence informing [Moreno] that he was aware of his prior complaints, and threatening retaliation if [Moreno] made such complaints while supervised by Taylor."  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, at 15; see also id. at 21.  Defendants argue that Moreno may not rely on these alleged comments because they are raised only in his brief and not in admissible form, and because they alter or contradict his own deposition testimony, in which he repeatedly asserted that he had no evidence that Taylor was retaliating against him because of his complaints of discrimination.

Upon consideration, the Court finds that Moreno fails to submit sufficient evidence to raise a genuine issue of material fact as to whether Taylor's or Hall's acts were motivated by

retaliation or whether any alleged denial of promotion was motivated by retaliation.  Moreno's attempt to raise such issues through assertions made in his brief or by contradicting his deposition testimony is neither sufficient nor permitted.  See Langman Fabrics v. Graff Californiaware, Inc., 160 F.3d 106, 112 (2d Cir. 1988).  Nor does he raise such an issue through his conclusory assertions of disparate treatment.  Accordingly, this claim is dismissed.

### III.  CONCLUSION

For the above reasons, defendants' motion for reconsideration is granted and, upon reconsideration, the Court grants defendants' motion for summary judgment.  Accordingly, the Clerk of Court is directed to enter judgment dismissing the complaint with prejudice and to close the file in this action.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       March 18, 2008